ANNA MALLINGER, administratrix of estate of Joseph E. Mallinger, deceased, appellee, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, INC., appellant.

No. 50376.

November 14, 1961.

Rider, Bastian & Beisser, of Fort Dodge, for appellant.

John H. Mitchell, of Fort Dodge, for appellee.

THOMPSON, J.—This litigation is an outgrowth of the same fatal accident we had before us in Mallinger v. Brussow, 252 Iowa 54, 105 N.W.2d 626. The plaintiff's petition asked a declaratory judgment holding that she was entitled under an insurance policy issued by the defendant to Joseph E. Mallinger, her decedent, on February 19, 1958, to the amount of $1000, with interest. The defendant denied liability under the policy, asserting the circumstances which brought about the death of the decedent, on July 25, 1958, were not within the purview of the policy, because of certain exclusions contained therein. The case was tried upon a stipulation of facts; so that we have only the proper construction of the terms of the policy to be determined. The trial court held there was an ambiguity in the terms of the policy such that, under the rule that in case of uncertainty or ambiguity in the terms of an insurance policy it must be construed against the insurer, the plaintiff was entitled to recover. It held the exclusion in the policy relied upon by the defendant was void. From this judgment the defendant appeals.

I. Under the stipulation of facts there is no question as to the amount, if the plaintiff is entitled to recover anything. Nor is there any dispute that the policy under which plaintiff

claims was in full force on the date of the death of the insured. The entire controversy centers around Coverage C of the policy, providing for medical payments, including funeral services, under certain conditions, and an exclusion, (h) (2), found later. Coverage C, so far as material, is found on page 5 and is quoted:

"Coverage C—Medical Payments. To pay reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray, dental, ambulance, hospital, professional nursing and funeral services, eyeglasses, hearing aids and prosthetic devices, to or for each person who sustains bodily injury, caused by accident, while occupying or through being struck by the automobile, provided the automobile is being used by an insured.

"In addition, with respect to such bodily injury to the named insured and his relatives, this coverage is extended to apply to any other land motor vehicle or trailer not operated on rails or crawler-treads, but not (1) a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads * * *."

The exclusion relied upon by the defendant is found on page 8. This page is headed, in bold-faced black type, "Exclusions—Insuring Agreements I and II". The first lines following the heading are "This insurance does not apply under:". Following these words are a number of exclusions not material here. The exclusion which defendant contends denies plaintiff's right of recovery is found in the second column on page 8. The material part is this: "Coverages C and M, to bodily injury to any person: * * * (h) (2) while occupying or through being struck by any automobile, land motor vehicle or trailer if such vehicle is owned by the named insured or a relative and is not included in the definition of 'automobile'; * * *."

It is apparent that without the exclusion in (h) (2), Coverage C would entitle the plaintiff to recover. It insured the decedent for funeral services arising from an accident while occupying or being struck by a farm type tractor designed for use principally off public roads, except while actually upon public roads; and the decedent was on a public road.

But the exclusion is equally definite. It says "This insur-

ance does not apply under: * * * coverages C and M [M being the clause which defines and limits the amount of medical expenses], to bodily injury to any person: * * * (2) while occupying or through being struck by any * * * land motor vehicle * * * if such vehicle is owned by the named insured or a relative * * *." By stipulation, the decedent was the owner of the "land motor vehicle", the farm tractor, upon which he was riding, that is to say, which he was "occupying" when struck. So the exclusion must apply, unless there is some ambiguity in the insurance contract which brings into play the rule above expressed that all uncertainties are determined strictly against the insurer.

We fail to find such an ambiguity. It is true a somewhat careful reading of the entire policy is required to make its meaning clear; but upon such reading it is apparent that no medical services were provided for the insured when he was injured while "occupying" his own farm tractor. It must be remembered that the policy's primary purpose was to protect the insured against public liability arising from his operation of an automobile, described as a Chevrolet sport coupé No. F58J164083. Of course he was entitled to any other provisions of the policy fairly covered by it. Coverage C provides for medical payments, including funeral services to the stipulated amount, caused to the insured by an accident involving the automobile; and in addition such medical payments as might be incurred from the operation of a farm tractor as specified in Coverage C and limited by the exclusions. The general rule that an insurance policy is a contract and is to be construed according to the language used is not in dispute.

We said, in Field v. Southern Surety Co., 211 Iowa 1239, 1242, 235 N.W. 571, 572: "The general rule is that a policy of insurance must be construed most favorably to the insured, but this rule applies only when there is a real ambiguity in the language of the policy. If the words used in the policy are plain and unambiguous, it is the duty of the court to give effect to such language in accordance with its plain and ordinary meaning, and not make a new contract for the parties by arbitrary judicial construction." Authorities are cited.

The problem here, as in all similar cases, is to determine whether there is an ambiguity. It is true the policy seems to insure, on page 5, under Coverage C, and to take away much of the benefit on page 8, under the exclusion (h) (2). But the exclusion or limitation need not be a part of the insuring clause; it is enough if it is clearly delimited at another point in the policy. Thus, in McCann v. Iowa Mutual Liability Insurance Co., 231 Iowa 509, 511, 1 N.W.2d 682, 684, we affirmed a directed verdict for the defendant where the coverage clause broadly insured against public liability caused by the operation of the plaintiff's automobile; while at another point in the policy there was a clause excluding coverage under " 'Coverages A * * *, while the automobile is operated by any person under the age of 14 years, or by any person in violation of any state, federal or provincial law as to age applicable to such person * * *.' " It appeared the insured automobile was at the time of the accident operated by the plaintiff's son in violation of a restricted school driving permit. Likewise in Twogood v. American Farmers Mutual Auto. Ins. Assn., 229 Iowa 1133, 296 N.W. 239, it appeared that the exclusions were separately set forth and not contained in or as a part of the insuring clause. We there reversed a judgment on jury verdict for the plaintiff, with directions to enter judgment for the defendant.

The California case of Security Trust & Savings Bank v. New York Indemnity Co., 220 Cal. 372, 377, 31 P.2d 365, 368, is much in point. The California Supreme Court there said: "The very purpose of exception or limitation clauses is to exclude risks otherwise covered by general coverage clauses. It is of their nature to conflict with general clauses in that they constitute restrictions on the latter. An insurance contract, like any other contract, should be construed as an entirety, the intention being gathered from the whole instrument."

While the exclusions in the policy now before us are not on the same page as the general coverage, they are clearly set out. They are in the same size type as the remainder of the policy; and, as pointed out above, they are labeled at the top of page 8, where the one in question is found, in large black-faced type, "Exclusions * * *." The most casual inspection of

the policy could not miss at least this heading which is in itself a warning to the policyholder to see what is excluded. In addition, page 1 of the policy provides: "State Farm Mutual Automobile Insurance Company, in consideration of the premium paid and in reliance upon the declarations which are in part set forth on page two and in part on page three of this policy, does hereby agree with the insured named therein to afford insurance for the coverages indicated in the declarations subject to all the terms and conditions of the Company's policy form 9427.

"It is understood and agreed that said declarations and policy form together with the terms of any endorsements designated on page two of this policy constitute the entire contract between the Company and the insured."

The policy is form 9427 and is so labeled. Here at the outset is a warning to the insured that his coverage is defined by the entire policy contract.

The exclusion of any medical coverage to the insured while he was occupying a farm tractor—a "land motor vehicle"—owned by himself is in no manner uncertain or ambiguous. The plaintiff urges that the exclusion left little medical or funeral expense coverage for the insured; it would apply only when he was riding on the public highway on a farm tractor not owned by himself or a relative, or if he were struck by such a vehicle on the highway. So it may be; but the fact remains it is the coverage granted and limited by the express terms of the policy, and we cannot make a new contract; we are confined to the contract the parties made for themselves. Exclusion (h) (2) says definitely that the medical coverage provided by Coverage C does not apply when the insured is occupying his own tractor; it is stipulated that he was operating a farm tractor owned by himself. There is no ambiguity in the language; and while the insured might have thought, if he read no further than page 5 of his policy, that he had medical coverage while occupying any tractor on a public highway, a reading of page 8, particularly exclusion (h) (2), would clearly have told him he did not have this protection when operating or

riding in or in any manner "occupying" a tractor which he or a relative owned.

A reading of the exclusion clause, together with the provisions for medical payments under Coverage C, shows definitely what is and is not covered. First there is provided payment to each person who is injured while occupying or being struck by "the automobile", provided it is being used by the insured. What is meant by "the automobile" is defined on page 7 of the policy, under the heading "Definitions". The definition is this:

"Automobile—means the private passenger automobile, utility automobile or trailer described in the declarations and includes a temporary substitute automobile and a newly acquired automobile, and under coverages A, B, C and M a trailer owned by the named insured.

"Under coverages D, D-50, F and G, 'automobile' also means any equipment permanently attached thereto.

"Under coverages F and G, 'automobile' also includes wearing apparel and luggage owned by the named insured or a relative while such property is in or upon the automobile."

Then under Coverage C comes the second paragraph which we have referred to above and which standing alone and without the exclusion clause on page 8 quoted above would give medical coverage also for a farm type tractor while being operated on public roads.

But the exclusion is there; it is as much a part of the policy as is the coverage, and we think it is definite and not subject to interpretation. It excludes coverage while the insured was "occupying" any automobile or land motor vehicle owned by the insured or a relative, which is not included in the definition of "automobile". So it leaves the coverage in force while the insured was occupying the particular insured automobile and also, if he were occupying or struck by *any* automobile or land vehicle which he or a relative did not own. "Relative" is defined on page 7 as "a relative of the named insured who is a resident of the same household." Exclusion clause (h) (2), supra, while limiting the coverage for medical payments under Coverage C is not difficult to understand and still leaves substantial medical benefits. Exclusion clause (h)

(3) immediately following says that no one other than the named insured and a "relative" is covered by Coverage C while occupying any vehicle not insured under the Insuring Agreements I and II. It has no bearing on the situation before us. It does not limit the right of the insured himself to recover, as does (h) (2). It leaves Coverage C in effect as to any person injured while occupying or being struck by the insured automobile, or under certain conditions in the use of a non-owned automobile by the insured or a relative as defined in Insuring Agreement II. It is also limited to "occupying", and does not exclude "being struck by". So only the named insured or a relative may recover medical payments for injuries sustained while occupying a farm tractor on the public highways, because it is not covered by Insuring Agreements I and II; and the right of the insured is limited so far as land motor vehicles are concerned to those he or a relative did not own. It must be admitted the exclusion leaves little coverage for injury from land motor vehicles, since it is limited to those the insured might be occupying or struck by which he or a relative did not own; but the language is definite and does not admit of interpretation. It should be kept in mind also that the medical payment coverages are not the major portion of the policy; its primary purpose is the public liability insurance for the described and defined automobile in its use on the public highways. This is not to say the insured is not entitled to any "fringe" benefits provided by the policy; but they are limited by the exclusion clauses and the parties had a right to contract as they saw fit. As we said in New York Life Insurance Co. v. Rotman, 231 Iowa 1249, 1251, 3 N.W.2d 603, 604: "However, this rule of interpretation may properly be invoked only in case of ambiguity or obscurity. Where the language is plain and the contract clear and understandable the rule is inapplicable." (Citing authorities)

So in Walters v. Mutual Benefit Health & Accident Assn., 208 Iowa 894, 899, 224 N.W. 494, 496, is this statement: "In placing an interpretation upon an insurance contract, it is well settled that, if its terms are ambiguous, that construction will be given it which is most favorable to the insured. On the

other hand, this rule does not warrant an arbitrary judicial construction. The language of the article in controversy must be taken in its ordinary and usual sense, and must be given such interpretation as was probably in the contemplation of the parties when the policy was issued."

II. There are not lacking cases in which we have held an ambiguity appeared in the terms of the insurance contract and construed them favorably to the insured. See Shain v. Mutual Benefit Health and Accident Assn., 232 Iowa 1143, 1149, 7 N.W.2d 806, 809; Brush v. Washington National Insurance Co., 230 Iowa 872, 879, 299 N.W. 403, 406; Crowe v. Merchants Life & Casualty Co., 202 Iowa 43, 209 N.W. 406; Robinson v. Hawkeye Commercial Men's Assn., 186 Iowa 759, 171 N.W. 118; Berry v. United Commercial Travelers, 172 Iowa 429, 154 N.W. 598, L. R. A. 1916B 617, Ann. Cas. 1918A 706; and generally, 29 Am. Jur., Insurance, section 264, pages 650, 651. It is there said:

"It has been deemed that an insurer should not be allowed, by the use of obscure phrases and exceptions, to defeat the very purpose for which the policy was procured. * * *

"However, since the parties to an insurance contract may make the contract in any legal form they desire, insurance companies have, in the absence of statutory provisions to the contrary, the same right as individuals to limit their liability and to impose whatever conditions they please upon their obligations, not inconsistent with public policy."

In Brush v. Washington National Insurance Co., supra, loc. cit. 230 Iowa 879, 299 N.W. 406, we quoted with approval from Kascoutas v. Federal Life Insurance Co., 193 Iowa 343, 346, 185 N.W. 125, 127, 22 A. L. R. 294, 297: "* * * wherever, in an insurance contract, the general terms of obligation to pay indemnities or benefits are sought to be limited or circumscribed by special exceptions, such provisions are universally construed most strictly against the insurer, and are not to be extended or enlarged by mere inference or uncertain implication." With this rule we agree.

We think it the true rule. We find in Shain v. Mutual Benefit Health and Accident Assn., supra, loc. cit. 232 Iowa

1149, 7 N.W.2d 809, a statement which goes still further. It is there said: "The terms of an insurance policy can and should be stated in concise and definite language. If the insurer desires to have certain exceptions apply to a definite provision of a policy, it should so state in that particular provision. The failure to do so leads to ambiguity."

This language seems to mean that no exclusions or exceptions are valid unless contained in the same provision which gives the benefit. Otherwise, if exclusions or limitations or exceptions are not in the insuring clause itself but are set out later, no matter how clearly, there is an ambiguity which under the familiar rule must be resolved against the insurer and the exclusions are void. We are not prepared to again say this is the law. There seems no good reason why exceptions may not be stated at another point in the contract if they are clearly set forth. The language quoted was not necessary to the decision in the Shain case, and cannot be approved. The parties have a right to draw their contract as they see fit, and are not compelled to embody all terms in one paragraph. All that is required is that all provisions of the policy be clearly stated therein so that they may be understood by an insured who takes the time and trouble to read them in their entirety.

We think the true rule is that quoted above from the Kascoutas case and that the language of the Shain case goes too far.

■■■ III. The plaintiff in reply to defendant's answer pleaded that the exclusion found in (h) (2), upon which the defendant relies, was repugnant to the insuring agreement found in Coverage C; and also that the exclusions were so placed in the policy as to deceive and mislead the insured because no mention of exclusions was found in the insuring coverage in C. The trial court placed its holding for the plaintiff on the ground of ambiguity and made no finding as to the allegations of repugnancy and fraud. There is no question of repugnancy. We turn again to the expressive language of the California Supreme Court in Security Trust & Savings Bank v. New York Indemnity Company quoted above. Exceptions are in their nature limitations on the general insurance provisions; they are

of course restrictions on the latter. Rather than being repugnant they are a part of the entire contract. No insurance contract is found entirely in one paragraph; there are often additional benefits found in clauses following the general coverage provisions; and there are often, generally, we think, limitations or exceptions also found in later parts of the policy. Insurance policies have tended to become more and more prolix; due, we think, not so much to a general desire on the part of the companies to mislead or deceive their customers as to make clear what benefits are really contracted for. If in this process they have tended to confusion rather than clarity, we can only say that where ambiguity has resulted they must suffer the consequences; but when they have made their meaning clear the courts must follow it. The entire contract must be considered and it must be interpreted as a whole.

IV. So with the claim of fraud. There is nothing in the stipulation on which the case was tried that has any slightest tendency to show any misleading or deceit on the part of the insurer, unless it arises as the plaintiff alleged from the fact that the exclusions are on page 8 while the general coverage clauses appear on pages 5 and 6. We have pointed out that the exclusions are clearly labeled as such in bold-faced black type, and are printed in the same size type as the insuring clauses themselves. It is not a case where the coverage clauses are set out in large and conspicuous type and the exceptions hidden in fine print. They are on a parity in all respects as to headings and type. It is the duty of the courts to construe all parts of the contract and its meaning must be adjudged from its "four corners"; and it is equally the duty of the insured to read what is readable and clear through the entire agreement. He may not stop after studying the coverage clauses and later complain that he was not advised of the exceptions, if they are a part of the contract. Page 8 is as much a part of the contract involved here as page 5; the exclusions are clearly labeled and (h) (2) definitely says "This insurance does not apply under: * * * coverages C and M, to bodily injury to any person: * * * while occupying * * * any * * * land motor vehicle * * * if such vehicle is owned by the named insured or a relative and is not

included in the definition of 'automobile'." The term "automobile", as we have pointed out above, is defined under the heading "Definitions" on page 7. It does not cover a land motor vehicle such as a farm tractor. We find no fraud.

It is true that if the record shows the judgment of the trial court was right, even though a wrong basis is given, it must be upheld. Courts are sometimes right for a wrong reason. Folsom v. Grove, 233 Iowa 1140, 1142, 11 N.W.2d 368, 370. Many other authorities might be cited. But we find nothing in the allegations of repugnancy or fraud which sustains the decision of the trial court.

For the reasons set out above, the judgment of the district court must be reversed and the cause remanded with directions to dismiss plaintiff's petition.—Reversed with directions.

GARFIELD, C. J., and HAYS, LARSON, PETERSON and THORNTON, JJ., concur.

BLISS, J., not sitting.

OLIVER, J., dissents.

SNELL, J. (concurring specially)—I concur in the result and agree that the interpretation of the policy by the majority is technically correct. When there is as much trouble interpreting an insurance policy as we have here, it is difficult to say that it is free from ambiguity. Policies written and sold to the public should not require the services of an expert in semantics to determine coverage.

GARFIELD, C. J., and HAYS, J., join in special concurrence.