**GOVERNMENT EMPLOYEES INSUR-ANCE CO., Plaintiff-Appellee,**

v.

**James A. ZIARNO, Edward T. Chamberlain and American Fidelity Fire Insurance Co., Defendants-Appellants.**

No. 54, Docket 25730.

United States Court of Appeals
Second Circuit.

Argued Nov. 16, 1959.

Decided Jan. 12, 1960.

**646**

Seymour·Farber, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., and Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant James A. Ziarno.

Morris Simon, Troy, N. Y. (Bernard Simon and Murphy, Aldrich, Guy, Broderick & Simon, Troy, N. Y., on the brief), for plaintiff-appellee.

Before MEDINA, MOORE and FRIENDLY, Circuit Judges.

MEDINA, Circuit Judge.

On December 31, 1956 appellant James A. Ziarno, in the course of his employment by the United States Department of the Interior, was operating a Dodge truck owned by the government in Saratoga County, New York, and there was a collision between the Dodge truck operated by Ziarno and a Ford sedan owned and operated by Edward T. Chamberlain. Chamberlain promptly sued Ziarno in the New York Supreme Court for $25,000 damages for personal injuries, and his insurance carrier, appellant American Fidelity Fire Insurance Co., having settled the property damage claim of Chamberlain against it, pursuant to the terms of its collision insurance policy held by Chamberlain, as assignee of Chamberlain caused suit to be brought in Chamberlain's name against Ziarno, in the County Court of Albany County, to recover $760.70, the damage alleged to have been sustained by Chamberlain's car in the collision. In September, 1957 appellee Government Employees Insurance Co., which had issued a $10,000–$20,000 personal injury and $5,000 property

damage policy to Ziarno, disclaimed liability on the ground that the effect of certain clauses of its policy, which we shall quote shortly, was to exclude any duty or liability to Ziarno if the car was operated by him at the time of the accident with the permission, knowledge and consent of the United States and in its business, which was conceded to be the case here. Thereafter Chamberlain and American Fidelity each instituted a separate Tort Claims Act suit in the United States District Court for the Northern District of New York to recover against the United States the same damages for personal injuries and for property damage to Chamberlain's car that had been demanded in the two prior actions which had been commenced in the New York State courts, except that the property damage claimed was reduced to $520.70, the amount paid by American Fidelity to Chamberlain in settlement of his claim. In this unsatisfactory state of affairs Government Employees Insurance Co. brought this declaratory judgment action, joining all interested parties as defendants, and sought judicial confirmation of its construction of its policy, a declaration that the policy did not cover the accident in question, and an injunction restraining Chamberlain from prosecuting the state court actions brought on his own behalf and on behalf of his assignee American Fidelity. On cross-motions for summary judgment Judge Foley held that the accident was not covered by the policy, but he denied the requested injunctive relief. Thereupon Ziarno, Chamberlain and American Fidelity appealed.

■■ At the outset we observe that the basis of federal jurisdiction is diversity of citizenship and so this court is to follow state law. The case is governed by New York law as the contract, according to the stipulation of the parties, is a New York contract, and there appear to be no substantial out-of-state contacts.

We may infer from the title Government Employees Insurance Co. that appellee made a specialty of issuing in-

surance policies to government employees, and this is also evident from the wording of the "Special Named Non-Owner Federal Employees" endorsement, the construction of which presents the sole question for decision on this appeal, and which reads as follows:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and Property Damage Liability applies to the named insured with respect to an automobile owned by or in the care, custody or control of the Federal Government or any political subdivision thereof, subject to the following provisions:

"(1) The insurance afforded by this endorsement does not apply to any automobile owned by the named insured or a member of his household.

"(2) The insurance afforded by this endorsement shall not apply to any liability for which protection is afforded under the provisions of the Federal Tort Claims Act, whether claim is asserted against the United States of America, the operator insured under this endorsement, or both.

"(3) The insurance afforded by this endorsement is limited to the legal liability of the named insured under circumstances wherein protection is not afforded him in the operation of Government-owned or leased vehicles under the provisions of the Federal Tort Claims Act.

"(4) The insurance afforded by this endorsement does not cover the insured's liability to passengers as the result of operation of a passenger vehicle designed to carry more than eight passengers in addition to the driver or to the operation of a public or livery conveyance.

"This endorsement forms a part of the captioned policy issued by the Government Employees Insurance Company and is effective as of 12:01 A.M. Standard Time on the effective date of the endorsement."

Appellee's contention, according to the allegations of the complaint, was that Chamberlain could and should have sued the United States and not Ziarno, "that such an action must be brought against the United States of America, and not against its employee, personally," and that Ziarno was afforded protection by the Federal Tort Claims Act, 28 U.S.C. § 1346(b), as a recovery could only be had against the United States, the judgment against the United States would be "a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim," 28 U.S.C. § 2676, and, according to the doctrine of United States v. Gilman, 1954, 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898, the government could have no recourse by way of indemnity from Ziarno.

■■ But appellee's position on this appeal concedes that there is nothing in the Tort Claims Act to prevent a claimant from suing and enforcing a recovery from the individual whose negligence caused the accident, should the claimant choose to sue the individual rather than the government. And it is worthy of note that but for the "Special Named Non-Owner Federal Employees" endorsement the policy clearly covers the accident in question. What we are concerned with here is the language of a limitation or exception to the broad coverage of the policy generally; and it does not seem to be disputed by any of the parties to this litigation that, in the language of appellee's brief, such limitation in order to be effective, "must be clear and free from ambiguity." A study of the New York cases makes it quite clear that, in the graphic words of a lower court, "It is not the construction or interpretation that the company gives to a policy that governs. *It is the plain meaning understandable to Joe Doakes, the average person that counts.*" Levine v. Accident & Casualty Ins. Co., 1952, 203 Misc. 135, 139, 112 N.Y.S.2d 397, 403 (emphasis that of the Court). See, e. g., Lachs v. Fidelity & Casualty Co. of New York,

1954, 306 N.Y. 357, 118 N.E.2d 555; Morgan v. Greater New York Taxpayers Mut. Ins. Ass'n, 1953, 305 N.Y. 243, 112 N.E.2d 273; McGrail v. Equitable Life Assurance Society, 1944, 292 N.Y. 419, 55 N.E.2d 483. This canon of construction is even stronger in a case such as the instant one in which the language to be interpreted involves an exclusion from liability. "If an exclusion of liability is intended which is not apparent from the language employed, it is the insurer's responsibility to make such intention clearly known." Aetna Casualty & Surety Co. v. General Casualty Co., 1955, 285 App.Div. 767, 770, 140 N.Y.S.2d 670, 672. See also Whiteside v. Insurance Co. of Pennsylvania, 1948, 274 App.Div. 36, 79 N.Y.S.2d 715. So the case comes down to whether or not we agree with the holding below that:

"These limiting provisions are clearly stated in layman's language and * * * unmistakably evidence agreement to afford insurance coverage only when the insured is driving a government-owned automobile and is not 'acting within the scope of his office or employment.'" [170 F.Supp. 199.]

█ While a layman, or indeed a lawyer might find the language of the "Special Named Non-Owner Federal Employees" endorsement to some extent ambiguous, we are wholly at a loss to find in the wording of the endorsement any basis whatever for the inference that what is stated therein would "unmistakably" indicate to a layman that the coverage was to apply only when the insured was using the Dodge truck without the permission of his superiors in the Department of the Interior and out of the scope of his authority as a federal employee. We think such meaning is not "unmistakably" clear. Moreover, we believe the natural inference to be drawn from the endorsement by a layman is that a government employee driving a government car with the permission, knowledge and consent of the United States and in its busi-

ness, as he should and normally would be driving it, is afforded protection against suits based upon his alleged negligence in the operation of the car, either by the policy or by the Tort Claims Act. But, if the claimant, as here, chooses to proceed against the employee personally, in a state or federal court, and to prosecute such a suit to a conclusion, and we were to adopt the construction of the endorsement pressed upon us by the insurance company, the employee would be afforded no protection whatever by the policy. He would have to retain counsel at his own expense to defend the suit or suffer judgment by default, and in the end perhaps find himself mulcted in damages far in excess of the $10,000 limited in the policy as liability for bodily injuries to a single person. Certainly we cannot proceed upon the assumption that the employee would not be possessed of property sufficient to satisfy such a judgment. Moreover, the claimant and his attorney might have good reason to proceed in this fashion, not only to avoid the limitation in the amount of the lawyer's fee to 20% of the recovery as provided in 28 U.S.C. § 2678, but because it might be anticipated that a jury would be more generous than a federal judge in assessing the damages.[1] Nor does the Tort Claims Act furnish any "protection" until a judgment has been entered in an action against the United States based upon the alleged negligence of the employee. Even the bringing of such an action by the claimant does not in any way afford "protection" to the employee under the Tort Claims Act. The action might be discontinued or it might proceed pari passu with another action in a state court against the employee alone. This is precisely what is disclosed by the present record. Chamberlain and his assignee are the injured parties, according to their allegations, and they are entitled to press for judgment in whichever court or courts they may consider it advantageous to them to do so.

1. For a discussion of these and other reasons that might induce an attorney to sue the individual employee see Wright, The Federal Tort Claims Act (1948), 78.

Thus we think that in the present posture of the parties and the litigation now pending between them we have "circumstances wherein protection is not afforded" Ziarno under the Tort Claims Act, and the policy must be so construed as to cover the collision on December 31, 1956. If, as and when Chamberlain or his assignee proceed to judgment against the United States in the Tort Claims Act cases now pending, appellee will no longer be under any obligation to Ziarno with respect to the collision in question for the reason that "protection" will then have been "afforded" under the terms of the Federal Tort Claims Act.

We agree with the statement in Whiteside v. Insurance Co. of Pennsylvania, 1948, 274 App.Div. 36, 38–39, 79 N.Y.S. 2d 715, 717: "If the insurance company desired to limit its liability as drastically as it claims it purported to do, it should have expressed that limitation in language that would reasonably have conveyed its meaning to an intelligent layman; it should have been so worded as to be understood not by an insurance expert, but by a person of ordinary business intelligence. This the insurer plainly failed to do." See also Learned Hand, J. in Gaunt v. John Hancock Mut. Life Ins. Co., 2 Cir., 1947, 160 F.2d 599, certiorari denied 331 U.S. 849, 67 S.Ct. 1736, 91 L. Ed. 1858.

A further contention advanced by appellee may be briefly disposed of. It seems to be thought that the aggregate premium paid by Ziarno for a one-year policy, namely $7.20 for the bodily injury coverage and $3.00 for the property damage coverage, or $10.20 in all, is some indication that the policy only applies to accidents that occur when the government employee is using the automobile without permission or out of the scope of his authority as a government employee. It is pointed out that this might well include innocent or emergency digressions, as well as possible joy riding or illegal use of the truck. This argument we think is based upon sheer speculation and adds nothing to the solution of the problem of construction.

The coverage is plainly limited in any event and we cannot say that the amount of the premium is out of line with the policy as interpreted by us. Probably in the vast preponderance of instances the claimant will proceed forthwith against the United States and take no action against the employee. This circumstance alone would seem to justify charging only a modest premium.

Reversed.